IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AHMED BRIKA,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

CASE NO. 2:08-cv-877
CRIM. NO. 2:01-cr-126
JUDGE MARBLEY
MAGISTRATE JUDGE ABEL

ORDER and
REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant motion, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the Magistrate Judge **RECOMMENDS** that claims one through three and five and six be **DISMISSED**; and that the petition for a writ of habeas corpus be **GRANTED** on claim four, and that an Amended Judgment Entry of Sentence be issued deleting the provision of petitioner's sentence that includes the tolling of his term of supervised release during the time period that he is out of the United States as a result of deportation.

Petitioner's request for an evidentiary hearing is **DENIED**.

### FACTS and PROCEDURAL HISTORY

Petitioner Ahmed Brika was convicted of using a telephone to extort money in exchange for the release of a kidnapped person. His conviction was affirmed on appeal, but the case was remanded for sentencing. On remand, Brika was sentenced to 156 months

incarceration and three years of supervised release. That sentence was affirmed on appeal. In this habeas corpus petition, Brika argues that new evidence requires vacation of his conviction and that he was denied the effective assistance of counsel before trial, at trial and on appeal.

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> Mohammed Bousfiha, the kidnapping victim, came to the United States from his native Morocco in 1988, becoming an American citizen in 1995. He settled in Columbus, Ohio, where he was joined by his four brothers. Within several years of his arrival, Mohammed had started his own business, running first a group of parking lots and later leasing gas stations from BP. Some of his brothers were also involved in his business ventures.

> In the late 1990s, Mohammed married Latifa Brika, a Moroccan citizen who is the sister of Defendant Ahmed Brika. The couple separated in 1999 and divorced in 2000. During their marriage, however, Defendant Brika would spend a great deal of time at Mohammed's home and businesses. The Bousfihas testified that while Mohammed was married to Latifa, Brika sometimes lived with the couple for weeks at a time. They also testified that Mohammed gave Brika money and sent him to "BP School," a five-day program run by BP for prospective owners of BP gas stations. Furthermore, according to the Bousfiha brothers, Brika held no job during this period, and he never owned a gas station. However, according to the testimony of Brika's friends and relations, Brika only lived with Mohammed for one week, he received little or no money from the Bousfihas, and he bought the BP station from Mohammed and operated it for approximately one year.

> On June 4, 2001, Mohammed, who was visiting Morocco, was kidnapped and held for over a week in a remote location by a

2

group of Moroccan kidnappers. He claims that on the second day of his captivity, Brika, whom he recognized only by voice because he was blindfolded, came to where he was being hidden and threatened him. The same day Brika, who had also been visiting Morocco, left the country and returned to the United States.

Beginning on June 7, 2001 and continuing for the duration of Mohammed's captivity, the Bousfiha brothers received multiple phone calls from both the kidnappers in Morocco and Brika in Milwaukee. The kidnappers and Brika demanded $312,000 for Mohammed's release, representing the sum Brika claims Mohammed owed him. Following the advice of the FBI, the Bousfihas told the kidnappers and Brika that they had raised the money. Brika arranged for one of the Bousfiha brothers to drive to Indiana to deliver the cash. Immediately after the exchange was made, the FBI captured Brika. When the kidnappers did not hear from Brika, they grew anxious. The Bousfihas convinced them that Brika had taken the money and absconded and was not going to pay them. The kidnappers thereupon negotiated a separate ransom of $35,000 for Mohammed and released him on June 13.

A two-count indictment charged Brika with conspiracy to commit a kidnapping offense, in violation of 18 U.S.C. § 1203, and with using a telephone to extort money in exchange for the release of a kidnapped person, in violation of 18 U.S.C. § 875. At trial, the defense portrayed Brika as an opportunist who heard about the kidnapping and took advantage of it to try to get the Bousfihas to pay a debt that he alleged Mohammed owed to him. The strategy was apparently successful, because the jury hung on the conspiracy charge. The jury's inability to arrive at a verdict caused the judge to deliver two *Allen* charges during the four days of deliberation.

In addition, during jury deliberations, the jury sent the judge numerous questions. Rather than bring the jury back into the courtroom each time, the judge, after consultation with counsel about his instruction and with their permission to use this

3

approach, would go into the jury room with the court reporter and instruct the jury. Counsel never objected to this procedure.

Brika was found guilty on the second count, using a telephone to extort money, and the judge declared a mistrial on the first count, conspiracy to kidnap.

*United States v. Brika*, 416 F.3d 514 (6th Cir. 2005), *abrogation recognized by United States v. Hughley*, 192 Fed.Appx. 447, 2006 Fed.App. 0568N (6th Cir. August 7, 2006). The Court sentenced petitioner to twenty years incarceration. Doc. No. 79. Petitioner filed a timely appeal. His claims are summarized as follows:

Brika makes six arguments. He first challenges the district judge's modification of the standard *Allen* charge, claiming that the modified charge was coercive. Second, he asserts that the judge's instruction of the jury in the jury room violated his right to be present and his right to be represented by counsel during a critical stage of the trial. Third, Brika argues that venue was improper in the Southern District of Ohio because he made all of the extortionate phone calls not only outside that district but even outside Ohio. Fourth, he objects to the judge's decision to disallow, on the grounds of lack of foundation, evidence he offered, yet to allow evidence offered by the prosecution to impeach a defense witness during cross-examination. Next, he contends that the judge erred in not holding an evidentiary hearing to decide a factual dispute about an omission in the record. Last, he objects to the use of a USSG cross-reference and other enhancements not found by the jury to increase his sentence.

*See United States v. Brika, supra.* On July 25, 2005, the United States Court of Appeals for the Sixth Circuit affirmed petitioner's conviction, but vacated his sentence and remanded for re-sentencing. *Id.* On January 11, 2006, the District Court re-sentenced petitioner to 156

months incarceration.  Doc. No. 120.  On May 23, 2007, the United States Court of Appeals for the Sixth Circuit affirmed petitioner's sentence.  *See* Doc. No. 126.  On October 19, 2007, the United States Supreme Court denied petitioner's petition for a *writ of certiorari*.  *See* Doc. No. 128.

On September 17, 2008, petitioner filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255.  He asserts as follows:

> 1.   Newly discovered evidence requires vacation of the conviction.
>
> 2.  Counsel was ineffective prior to trial.
>
> 3.  Counsel was ineffective at trial and appeal.

It is the position of the respondent that petitioner's claims are without merit.

## CLAIM ONE

In claim one, petitioner asserts that newly discovered evidence, *i.e.,* testimony of Michael Wile, places the alleged victim, Mohammed Bousfiha,[1] in Columbus, Ohio, on the dates that Mohammed allegedly had been kidnapped and was being held in Morocco. Petitioner contends that this evidence establishes his actual innocence of the charge and requires his conviction to be vacated, or alternatively remanded for a new trial.  In support of this claim, petitioner has attached an affidavit from Michael Wile dated December 28, 2007, which indicates in relevant part as follows:

---

[1]  To avoid confusion, the Court will refer to the alleged victim, Mohammed Bousfiha, as "Mohammed" and refer to his brothers by their first names as well.

I am the Plaintiff in case no. 04CVH022198, Wile v. Bousfiha, which was litigated in Franklin County Common Pleas Court in 2004.

The above mentioned case related to an agreement I had with Mohammed Bousfiha to sell to him a BP gas station in Franklin County.

That on or about June 12, 2001, I met with Mohammed on at least one occasion to discuss the sale. On that date, Mohammed has his brother, Marrouan, sign an asset purchase agreement on his behalf.

That during the process of this sale, both before and after June 12, 2001, I had contact with Mohammed Bousfiha to discuss the sale. During these meetings, Mohammed never complained of being involved in a kidnapping, and did not appear disfigured.

That in August, 2001, Mohammed Bousfiha presented me with a check which was dishonored. I spoke with him on several occasions after that point. He never mentioned any issues with a kidnapping.

That I was never contacted by Ahmed Brika's defense counsel to testify in his case; however, had he contacted me, I would have been willing to do so and would have provided the above information.

*Affidavit of Michael Wile, Exhibit A to Petition.* It is the position of the respondent that petitioner's claim should be construed as a motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, is untimely and fails to establish a basis for a new trial under Rule 33 or for relief in §2255 proceedings.

The United States Court of Appeals for the Sixth Circuit summarized the burden of proof for establishing actual innocence in *Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir.2005):

The United States Supreme Court has held that if a habeas

> petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*See also House v. Bell,* 547 U.S. 518 (2006).

The United States Supreme Court has held that a free standing claim of actual innocence does not present an issue appropriate for federal habeas corpus relief. *Herrera v. Collins, supra,* 390 U.S. at 400 ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.")

A claim of actual innocence "is not itself a constitutional claim,

but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).... [T]his actual innocence "gateway" has limited application. *See Schulp v. Delo,* 513 U.S. 298, 321-22, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (explaining that the fundamental-miscarriage-of-justice exception was intended to remain rare and only be applied in the extraordinary case); *Sawyer v. Whitley,* 505 U.S. 333, 338, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (noting that the exception may be used to reach the merits of: "(a) *successive claims* that raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised, which constitute an *abuse of the writ;* or (c) *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims") (emphasis in original). These bars to habeas petitions are premised on the Court's concerns for the " 'finality, comity, and conservation of scarce judicial resources.' " *House v. Bell,* No. 04-8990, 2006 U.S. LEXIS 4675, at *33 (June 12, 2006) (quoting *Schlup,* 513 U.S. at 324).

*Artiaga v. Money,* 2006 WL 1966612 (N.D.Ohio July 11, 2006). The Supreme Court has suggested that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," but went on to state that the "threshold showing for such an assumed right would ... be extraordinarily high." *Herrera v. Collins,* at 417. In *House v. Bell, supra,* 547 U.S. at 554-55, the Supreme Court subsequently declined to resolve whether free standing claims of actual innocence are properly considered in habeas corpus proceedings concluding that, in any event, House had not satisfied the "extraordinarily high" threshold for such a hypothetical claim, though he met the *Schlup* gateway standard for review of his procedurally defaulted

claims. *Id.*

Courts in the Sixth Circuit similarly have not recognized a free-standing claim of

actual innocence:

> Citing *Herrera* and *House,* the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall,* No. 05-2419, 2007 WL 2566047, *2-3 (6th Cir. Sept.5, 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent"); *Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir.2007); *see also Monroe v. Smith,* 197 F.Supp.2d 753, 763 (E.D.Mich.2001) (habeas petitioner's claim that he is entitled to relief due to state trial judge's failure to grant him a new trial based on newly-discovered evidence is not cognizable in a habeas proceeding). Thus, Petitioner's claim that he is actually innocent and has newly discovered evidence to prove it does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer,* 159 F.Supp.2d 582, 606 (E.D.Mich.2001).

*Lardie v. Birkett,* 2008 WL 474072 (E.D. Michigan February 19, 2008); *see also Webb v.*

*Wolfenbarger,* 2009 WL 369482 (E.D. Michigan February 11, 2009) (same).

Further, even assuming petitioner's claim of actual innocence may be considered in

these proceedings, the record fails to reflect petitioner  has established the high threshold

required for such a claim.  Wile's proposed testimony, if credited by the jury, contradicts

other physical as well as testimonial evidence from Mohammed and his family members

indicating he was in Morocco during the time in question being held captive and suffered

various injuries during that time.  Aside from the testimony of the Bousfihas, referred to

above, the government introduced photographs of Mohammed taken by police on June 14, 2001, at his sister's house in Morocco which depicts injuries he received while being held by kidnappers. *See Trial Transcript*, at 262-269; *Government's Exhibits 1-1 through 1-20*. On June 26-27, 2001, the FBI interviewed Bousfiha in Morocco regarding his kidnapping. *See Exhibit A to Return of Writ*. Statements by co-conspirators, Nawal Asmi, Amal Khalla, and Najat Ben Ichi (which were not introduced at trial but at sentencing) also corroborate that Mohammed had been kidnapped while in Morocco on the dates in question. *See Exhibits to Return of Writ*.

Petitioner's claim may be construed under Rule 33 of the Federal Rules of Criminal Procedure. *See United States v. Sims*, 156 F.Supp. 655, 658 (E.D. Mich. 2001)  Rule 33 provides:

> (a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
>
> (b) Time to File.
>
> (1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
>
> (2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

On March 22, 2002, the jury rendered its verdict of guilt. Doc. No. 64. On November 6, 2002, the initial judgment entry of sentence was entered. Doc. No. 81. On January 11, 2006, an amended judgment entry of sentence pursuant to remand from the United States Court of Appeals was entered. Doc. No. 120. Petitioner filed this federal habeas corpus petition on September 17, 2008. Doc. No. 129. If the three year time period for filing a motion for new trial under Rule 33(b)(1) begins to run from the date of the jury's finding of guilt, or the initial judgment entry of sentence, construing claim one under Rule 33, his motion is untimely. However, respondent refers to, and this Court is unable to locate, any cases within the Sixth Circuit clarifying this issue. *See United States v. Monus*, 356 F.3d 714, 717 (6th Cir. 2004)(Under the pre-1998 version of Rule 33, by which the time period began to run within two years after "final judgment," that term was defined as the date of the initial judgment entry of sentence, and not a re-sentencing entry)(citations omitted); *see also United States v. Cirino,* 2006 WL 3716048 *1 (D. Mass December. 11, 2006), citing 3 C. Wright, N. King, S. Klein, Civil Practice and Procedure, §558 at 603 (2004)(If the trial was to a jury, time period begins to run under Rule 33 from the date of the verdict rather than the date of sentence; if trial was to the court, the time runs from the entry of the court's finding of guilt.)

Again, however, assuming that petitioner's claim of actual innocence is timely under Rule 33, for the reasons discussed, the record does not reflect that relief is warranted. "The defendant bears the burden of showing that a new trial ought to be granted." *United States v. Seago,* 930 F.2d 482, 488 (6th Cir.1991).

> To be granted a new trial due to newly discovered evidence, the defendant must show that: (1) the new evidence was discovered after trial; (2) the evidence could not have been discovered with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal. *United States v. Hawkins,* 969 F.2d 169, 175 (6th Cir.1992), *cert. denied,* 506 U.S. 1069, 113 S.Ct. 1021, 122 L.Ed.2d 168 (1993).

*United States v. Garcia*, 19 F.3d 1123, 1126 (6th Cir. 1994).  In view of substantial evidence of guilt, petitioner cannot establish that Wile's testimony would likely have produced an acquittal.

For all these reasons, claim one is without merit.

## CLAIM TWO

In claim two, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to conduct adequate pre-trial investigation and failed to have "evidentiary and testimonial support ready for petitioner's defense" that he was involved in a business transaction with Mohammed for purchase of a gas station Mohammed owed him money.  *See Petition,* at 6-7.  Specifically, petitioner complains that his attorney failed to call as defense witnesses employees of the gas station who would have confirmed that the purchase agreement between Mohammed and petitioner and that Mohammed owed petitioner money; failed to call the Bousfihas brothers or relatives, who also would have testified that Mohammed owed petitioner money for his agreed purchase of the gas station, failed to cross examine Mohammed with documentation verifying the details of their agreement, and failed to call the gas station manager who also would have testified that

12

Mohammed had agreed to purchase the gas station from petitioner, and this was the reason petitioner sought to obtain payment from Bousfihas.  *Id.* at 7-8.  Finally, petitioner complains that defense counsel failed to cross examine Mohammed with his prior inconsistent statement to police that he heard petitioner's voice in Morocco on June 5, 2001, and not on June 6, 2001, to which he testified to at trial.  *Id.*, at 8.

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington, supra,* 466 U.S. at 687; *see also Blackburn v. Foltz,* 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Petitioner has failed to meet this standard here. Nothing in the record indicates that any of the evidence referred to by petitioner would have tended to exonerate him of the charges. Further, even assuming that other witnesses or documents would have established Mohammed had agreed to purchase petitioner's gas station and owed him money for the sale, such evidence would not have exonerated petitioner of the charge of using a telephone to extort money in exchange for release of a kidnapped person, in violation of 18 U.S.C. §875. Further evidence establishing that Mohammed owed petitioner the money he demanded may only have provided a motive for petitioner's demand for ransom in exchange for the release of Mohammed.

Petitioner argues that none of the recordings of telephone conversations between the Bousfihas and kidnappers reflect his guilt of the crime, because the kidnappers refer to a person by the name of "Hamid," who is not the same person as the petitioner. This argument is not persuasive. Evidence indicates that, although petitioner's name is spelled "Ahmed," everyone called him Hamid. *Trial Transcript*, at 184.

> Q. Would it be accurate in... saying that the word Ahmed never crosses anybody's lips...?
>
> A. We always called [petitioner] Hamid.

\*\*\*

Q.  Now he has another name, doesn't he, another name that people call him?

A.  Yes.

Q.  Isn't that... Tony?

A.  Yes.

\*\*\*

Americans refer to him as Hamid or Tony.

\*\*\*

Q.  He is not known as Ahmed?

A.  No.

\*\*\*

I never knew his name was Ahmed.  I always knew he was Hamid.

*Id*. at 279-280.

Q.  So we are clear, you say Hamid.  Is that how you knew Ahmed Brika?

A.  Yes.

Q.  Why Hamid instead of Ahmed?

A.  Well, his real [name is] Ahmed, but it's like easier to say Hamid.  So everybody calls him Hamid.  It's like you say William, but people say Bill....

Q.  You always refer to him as Hamid?

A.  Yes.

15

*Id*. at 396.

Claim two is without merit.

## CLAIM THREE

In claim three, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to challenge the indictment and jury instructions on appeal. Petitioner argues that the evidence fails to reflect he requested ransom money in exchange for Mohammed's release or that he had the authority to release Mohammed, and the government therefore failed to establish his guilt of the charge under 18 U.S.C. §875(a). He further contends that the Court improperly advised the jury, in response to a question during deliberations, thereby altering the elements of the charge against him. *See Memorandum in Support*, at 9-12.

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to challenge the indictment on the basis that the evidence did not conform to the charge in Count Two, and failed to object to the Court's instruction in response to a question from the jury during deliberations as improper. Petitioner asserts, "[t]he Court's instructions had the effect of altering the charges against" him, and complains that his appellate counsel failed to raise the foregoing issues on appeal.

Petitioner raised these same claims in his *pro se* supplemental assignments of error in the -appeal of his re-sentencing. The United States Court of Appeals for the Sixth Circuit rejected his arguments in relevant part as follows:

16

We ... consider two claims raised by Brika in a *pro se* supplemental brief before this court. Brika first argues that his indictment was defective because the prosecutor failed to plead and prove an essential element of the indictment. Next, he argues that the jury instructions departed from the indictment, such that there was a "constructive amendment" of the indictment which rendered it defective. Neither claim has merit.

The first claim raised in Brika's *pro se* brief amounts to a claim that the indictment failed to specify "that the alleged victim was a kidnapped person." Brika claims this error is a defect in the indictment that may be raised at any point during the case. *See* Fed. R. Crim. P 12(b)(3) ("[A]t any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense.").

To the extent that Brika challenges the prosecutor's failure to *prove* an element of the offense, we cannot now consider his arguments. Brika's convictions already have been affirmed by an earlier panel. Questions of proof of guilt are not properly before us on this appeal from resentencing. *United States v. Procter*, 215 Fed.Appx. 409, 411 (6th Cir.2007) ( "Defendant's third argument could have been brought in his first appeal and is therefore waived. Defendant may not reassert issues that he raised or should have raised in his earlier appeal.") (citing *United States v. McKinley*, 227 F.3d 716, 718 (6th Cir.2000)).

To the extent that Brika claims the indictment itself is defective because it fails to invoke the court's jurisdiction or to state an offense, a claim that we could review at any time, *see* Fed. R. Crim. P. 12(b)(3), his assertion is without merit. He claims that his indictment for crimes under 18 U.S.C. § 875(a) (using the phones to extort ransom) and 18 U.S.C. § 1203 (hostage-taking) failed to state an offense because the government did not plead the "kidnapped person" element. Brika's claim is erroneous. He was convicted only under §875(a). The indictment on that count clearly refers to the "ransom and reward for the release of Mohammed Bousfiha *who had been kidnapped* and was then being held for ransom and reward." (emphasis added). The government did not fail to specify a kidnapped person.

We note that there are two alternative ways to construe Brika's argument. First, Brika may be arguing that the jury's two

17

verdicts were inconsistent because they resulted (1) in a conviction under a statute (§ 875(a)) that required that a person be kidnapped and (2) in an acquittal on the hostage-taking offense. *See Pro Se Supp. Br. of Appellant,* at 8 ("the Appellant states with equal simplicity that there cannot be a kidnapped person ... without a kidnapping."). We cannot review this claim in this appeal. However, even if the verdicts were inconsistent, that would not be a ground for reversal. *See United States v. Powell,* 469 U.S. 57, 64-65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (citing *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (Holmes, J.))

Brika also may be arguing that, because the government did not indict him for kidnapping under 18 U.S.C. § 1201, the government failed to state an offense under § 875(a). *Pro Se Supp. Br. of Appellant,* at 10. Brika refers this court to no authority indicating than an indictment under § 875(a) must accompany one under § 1201. They are separate statutes with separate sentencing guidelines; no authority suggests than an indictment for the former must accompany one for the latter. We note also that Brika's arguments relating to the kidnapping cross-reference depend on a defendant's being able to violate § 875(a) without being responsible for kidnapping. Brika cannot have it both ways. Brika has not shown that the indictment failed to state an offense, such that we could reverse his conviction on this appeal.

### B

Brika's second *pro se* claim is that the district court delivered "an erroneous instruction upon a jury note wherein it instructed the jury with the essential elements of 18 U.S.C. 875(b) and 875(c), wherein the defendant, Brika, had only been indicted by the Grand Jury on 18 U.S.C. 875(a).... This constructive amendment of the indictment is a jurisdictional defect which also can be raised at any time." *Pro Se Supp. Br. of Appellant,* at 2-3. Because it relates to the propriety of jury instructions, rather than to whether the indictment invoked the district court's jurisdiction or stated an offense, this issue is clearly one which should have been raised in Brika's first appeal. It has thus been waived.[FN8] *Procter,* 215 Fed.Appx. at 411 (citing *McKinley,* 227 F.3d at 718).

FN8. Were we to consider this issue, we would review it for plain error. *United States v. Swafford,* 385 F.3d 1026, 1028 (6th Cir.2004). Under any standard, however, Brika's contention would lack merit. The district court relied on two cases when it issued jury instructions: *United States v. Cooper,* 523 F.2d 8-10 (6th Cir.1975), and *United*

18

> *States v. Holder*, 302 F.Supp. 296, 297 (D.Mont.1969). Brika is correct that those two cases applied different subsections of 18 U.S.C. § 875 than that which is at issue here. He claims that, as a result, we now should reverse his conviction.
>
> Although we need not consider this claim, we note that there was no error on this score, let alone a plain one. *Cooper* makes clear that convictions under § 875(c) do not require ultimate power to release the victim. There is no textual feature materially distinguishing § 875(a) from § 875(c) on that front. As we have held, it is only natural that the similarly worded subsections of § 875 be read together. *United States v. Heller*, 579 F.2d 990, 997-99 (6th Cir.1978) (holding that different subsections of § 875 should be given similar interpretations). As a result, Brika's contention that the district court "constructively amended" his indictment by referring to cases dealing with analogous statutes lacks merit.
>
> V
>
> Having rejected all of Brika's challenges to his sentence, we affirm.

*United States v. Brika*, 487 F.3d 450, 463-65 (6th Cir. 2007).  Because the United States Court of Appeals for the Sixth Circuit has already considered, and rejected, petitioner's argument that the jury instructions and indictment were improper, this Court will not now again consider these arguments here.  "A § 2255 motion may not be used to relitigate an issue that was raised on [direct] appeal absent highly exceptional circumstances." *Dupont v. United States*, 76 F.3d 108, 110-111 (6 thCir.1996) *citing United States v. Brown*, 62 F.3d 1418 (6th Cir. 1995).

Additionally, as noted by the Court of Appeals, petitioner's allegation that the evidence was constitutionally insufficient to sustain his convictions, should have been raised on direct appeal, but was not.  Therefore, this claim is not properly before this Court.

> The Sixth Circuit has repeatedly held the sufficiency of the evidence to support a conviction may not be collaterally reviewed during a §2255 proceeding, as the issue of sufficiency of the evidence by which a defendant is convicted can be raised only by direct appeal. *United States v. Shields*, 291 F.2d 798, 799 (6th Cir.),

*cert. denied,* 368 U.S. 933 (1961); *United States v. Osborne,* 415 F.2d 1021, 1024 (6th Cir.1969) ("Moreover, we have repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding."), *cert. denied,* 396 U.S. 1015 (1970); *Hall v. United States,* 172 F.3d 872 (6th Cir.1998) (unpublished table decision), *available in* 1998 WL 887276, at *2 ("This court did not grant a certificate of appealability as to Hall's challenge to the sufficiency of the evidence supporting his CCE conviction. Whether the evidence was sufficient to support a conviction may not be collaterally reviewed in a § 2255 proceeding." See *United States v. Osborn,* 415 F.2d 1021, 1024 (6th Cir.1969) (en banc), *cert. denied,* 396 U.S. 1015 (1970).

*Kendricks v. United States*, 2007 WL 308929 (E.D. Tenn. Jan. 26, 2007). Because petitioner failed to raise his claim of insufficiency of the evidence on direct appeal, he must establish cause and actual prejudice from the error or that he is actually innocent of the offense. *Id.,* citing *Bousley v. United States*, 523 U.S. at 619;*United States v. Frady,* 456 U.S. 152 (1982). Petitioner has failed to meet  meet this standard here.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." ' *Id.* (quoting *Jackson,* at 326).

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

A. Were the omitted issues "significant and obvious?"

B. Was there arguably contrary authority on the omitted issues?

C. Were the omitted issues clearly stronger than those presented?

D. Were the omitted issues objected to at trial?

E. Were the trial court's rulings subject to deference on appeal?

F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

G. What was appellate counsel's level of experience and expertise?

H. Did the petitioner and appellate counsel meet and go over possible issues?

I. Is there evidence that counsel reviewed all the facts?

J. Were the omitted issues dealt with in other assignments of error?

K. Was the decision to omit an issue an unreasonable one

21

which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.1999). The Sixth Circuit cautioned, however, that

this list is not exhaustive and need not produce a certain "score." *Id.* at 428.

Count Two of the Indictment, the sole count on which petitioner stands convicted,

charged him with violating 18 U.S.C. §875(a) as follows:

> On or about June 9, 2001, in the Southern District of Ohio and
> elsewhere, AHMED BRIKA, did willfully and knowingly and
> with intent to extort the sum of approximately $330,000.00
> from Mohammed Bousfiha, did transmit and cause to be
> transmitted in interstate commerce from the State of
> Wisconsin, to the Southern District of Ohio, a telephone
> communication to the brother of Mohammed Bousfiha, which
> communication contained a demand and request for the said
> approximate sum of $330,000.00 as ransom and reward for the
> release of Mohammed Bousfiha who had been kidnapped and
> was then being held for ransom and reward.

*See* Doc. No. 8. The language tracks that of the statute, which provides:

> Whoever transmits in interstate or foreign commerce any
> communication containing any demand or request for a
> ransom or reward for the release of any kidnapped person,
> shall be fined under this title or imprisoned not more than
> twenty years, or both.

18 U.S.C. § 875(a).

Abdelali Bousfiha testified that, on June 9, 2001, he received a phone call from one

of Bousfiha's captors in Morocco. *Trial Transcript*, at 529. At that time, Abdelali asked the

unknown caller to have petitioner call him. He was told that, when the money was

delivered, Mohammed would be escorted home. *Id.*, at 531-532. They agreed that, once

Abdelali delivered the money to petitioner, Mohammed would be freed. Abdelali asked

unknown caller to tell petitioner not to bring anything with him when they met because he was worried about being hurt. *Id.*, at 533-34. Petitioner later called Abdelali, who recognized petitioner's voice. Abdelali told petitioner they had 312 thousand dollars, and petitioner told him he needed 330 thousand dollars for Mohammed's release "because there are expenses. This is my money. Expenses ha[ve] been incurred and paid." *Id.* at 536-37. Petitioner told Abdelali to meet him in Indianapolis to hand over the money. *Id.* at 540. After petitioner's arrest, Abdelali advised the unknown caller from Morocco that they had given petitioner the money. *Id.* at 558; 562. Three days later, Bousfiha was released. *Id.* at 562. Petitioner argues, however, that because Mohammed was transported only within the country of Morocco, and not in interstate commerce, his attorney should have argued on appeal that the evidence was constitutionally insufficient to sustain his conviction on this basis. *See Traverse.* The United States Court of Appeals for the Sixth Circuit, however, rejected this same argument in overruling petitioner's challenges to various sentencing enhancements made in his re-sentencing appeal as follows:

> Brika was convicted for using a telephone to extort money in exchange for the release of a kidnapped person, in violation of 18 U.S.C. § 875(a).
>
> ***
>
> Both of the statute's Commerce-Clause-based jurisdictional elements, *see United States v. Lopez*, 514 U.S. 549, 562-63, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), are also satisfied here, although only one is required. Bousfiha was transported in foreign commerce when he was kidnapped and detained in

> Morocco. Brika traveled in foreign commerce when he flew to Morocco in furtherance of the offense and then reentered the United States. He traveled in interstate commerce when he flew from New York to Cincinnati to Milwaukee, and then again when he drove to Indiana. Brika also, as a necessary condition of his § 875(a) conviction, used a means or instrumentality of interstate or foreign commerce (a telephone) in committing the offense for which he was convicted. Brika thus satisfies each jurisdictional element of § 1201, although he need only have satisfied one to have been criminally responsible. Brika's conduct rendered him criminally responsible for kidnapping according to the elements of that offense under 18 U.S.C. § 1201.

*United States v. Brika,* 487 F.3d at 454-55. Because, when viewing the evidence in the light most favorable to the prosecution, the evidence plainly was constitutionally sufficient to sustain petitioner's conviction, petitioner has failed to establish cause and prejudice for his procedural default. He likewise has failed to establish that he was denied the effective assistance of appellate counsel for failing to raise this claim on direct appeal.

Claim three is without merit.

### CLAIM FOUR

In claim four, petitioner asserts that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that he was denied the right to a public trial when the District Court issued a jury instruction in response to the jury's question during deliberations.

The United States Court of Appeals for the Sixth Circuit made the following relevant factual findings in rejecting petitioner's claim that the district judge erred in interacting with the jury in the jury room outside the presence of counsel and the Defendant:

In this case, the jury sent the judge eleven questions over the course of four days of deliberation. Each time he received a question, the judge would convene counsel for both sides, read them the question, explain the answer he intended to give, ask for counsel's input, tell counsel his final decision, give counsel the opportunity to object, and then ask counsel if he should bring the jury into the courtroom or if he should answer the question in the jury room. If one counsel suggested that the judge go into the jury room, the judge asked for objections. Neither counsel ever objected to the judge speaking with the jury in the jury room. Indeed, counsel for the Defendant occasionally advocated this procedure, saying, for instance, that he didn't think the jury "need[ed] to be paraded into the courtroom anymore." The judge thereupon took the court reporter into the jury room and instructed the jury in person.

The judge appears to have spoken to the jury six times. FN4 The first time, he read them a quotation from a case, by way of explanation. Both counsel had approved this particular text. The second time, the judge told the jurors they could recess and reminded them not to talk about the case. The third time, he reread instruction number 21. He had previously told counsel this was what he would do, and they did not object. The fifth time, the judge reread the jury part of instruction number 21, and read it two brief additions to instruction number 24, with approval of counsel. The judge also commented:

FN4. Brika claims that the judge spoke to the jury in the jury room seven times, but the joint appendix only records six. Br. for Appellant at 19. Brika also claims that the judge "paraphrased" to the jury his discussions with counsel. *Id*. at 22. This is not accurate. According to the record, when the judge read the jury a text, it was always the same text he had discussed with counsel.

The Court also brought a revised instruction No. 24 and there are revisions in two sentences. And you will see them because they are in the Court's handwriting and that was in response to what we thought might help clarify this question that you submitted and I will leave that for you.

25

I will again emphasize that you are not to take any one instruction as stating all of the law in the case and not overemphasizing one instruction to the neglect of all of the others; that the instructions are to be read as a whole.

The second paragraph repeats an instruction that counsel had agreed to when the judge spoke to the jury the third time. Each time he read an instruction, the judge carefully noted that counsel for both sides agreed to the instruction he was giving.

The fourth time the judge spoke to the jurors in the jury room, he first told them that they could recess, then asked them to bear in mind the Allen charge they had heard earlier. The judge had not informed counsel that he would make this comment about the Allen charge. The sixth and final time the judge met with the jury, he informed it that he intended to declare a mistrial on Count 1. The discussion in the jury room reads, in pertinent part:

THE COURT: Madame Foreperson, have you reached a unanimous verdict on Count 2? Don't tell me what it is.

THE FOREPERSON: Yes, we have.

THE COURT: Here is what the Court is going to do. I am going to declare a mistrial because the jury is hung with respect to Count 1. I will take your verdict on Count 2.

What I will ask to you do [sic] is to complete the verdict form. When you have completed the verdict form, let Mr. Clark know, we will bring you into court and I will indicate that a mistrial is declared with respect to Count 1 because the jury cannot reach agreement on it after having deliberated for four days and after having had two Allen and I will take your verdict on Count 2.

THE FOREPERSON: I can't ask you a question?

THE COURT: Not now.

THE FOREPERSON: Can I ask a question in reference to the

26

signing of the sheets if it's already done?

THE COURT: Yes.

UNIDENTIFIED JUROR: Will you explain what a mistrial is?

THE COURT: It's just that; it is simply a device that the Court will use to declare the trial over because you can't agree on that count. So that count can be tried over. And the count on which you have reached agreement, of course, will not.

Although the judge had previously discussed with counsel his intention to find out if the jury had reached a verdict on Count 2 and to tell them he would declare a mistrial if they had, he obviously had not discussed with counsel his intention to answer the juror's question.

\*\*\*

Once Brika's attorney had heard and debated the proposed instructions and placed his objections on the record, and once he had satisfied himself that the judge would not go beyond the agreed upon instructions, he apparently believed that he had served his client's best interest both in terms of the text of the instruction and in terms of not aggravating the jurors by repeatedly forcing them to return to the courtroom. Defense counsel may have lost some opportunity to advocate when he allowed the judge to appear before the jury alone, but he seemed ready to balance that possibility against an interest in accommodating the jury. His willingness, after having had the opportunity to discuss and object to the proposed instruction, to permit the judge to instruct the jury face to face without being there to monitor the encounter, was a strategic decision of the sort that we are generally loath to second-guess. See *Howard v. Bouchard,* 405 F.3d 459, 481 (6th Cir.2005) ( "[T]rial counsel's strategic decisions are accorded strong deference."). Absent a complete denial of counsel, we will not now permit Brika to challenge his counsel's decision to agree to allow the judge to instruct the jury in the jury room.

With regard to the two statements that the judge made to the jury without forewarning counsel, our analysis is different. When the judge answered a juror's question about what a mistrial was *after* the

jury had signed the verdict form on Count 2 and *after* the judge had informed them that he was going to declare a mistrial on Count 1, not only was he not instructing the jury in its deliberations, he was also not speaking to them during a critical stage of the trial because at that point nothing the judge said had any effect on the outcome of the trial. Therefore, we hold the judge committed no error in thus speaking to the jury outside the presence of counsel.

More problematic was the second impromptu statement, when the judge reminded the jury, while it was still deliberating, about the *Allen* charge he had given them that day. We recognize that the instruction of a jury in the midst of deliberation is a critical stage of the trial, and we note that the exception we discussed above to the presence of counsel applies only when counsel is given the opportunity to hear and object to the proposed instructions before the judge gives them. However, because the judge did no more than make a passing request that the jurors think about the *Allen* charge he had read them several hours earlier, we find that making this comment outside the presence of counsel, while perhaps ill-advised, did not rise to the level of error, and we also find that the absence of counsel at this point did not prejudice Brika. *Cf. Giacalone,* 588 F.2d at 1164 (finding no prejudice when judge responded, without consulting counsel, to jury's note stating it was deadlocked by sending in note reading, "Please continue your deliberations").

*United States v. Brika*, 416 F.3d at 523-526.  The Court of Appeals noted:

Brika was represented by counsel, and ... counsel's decision to permit the judge to speak to the jury in the jury room was an invited error that did not result in prejudice to Brika. See *United States v. Macias*, 387 F.3d 509, 521 (6th Cir.2004) (" 'The doctrine of "invited error" refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit.' ") (quoting *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir.1991) (additional internal citations omitted)); *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir.2002) (" 'An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course.' ") (quoting *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir.1990)).

*Id.* at 525.  This same doctrine applies to petitioner's assertion that he was denied the right

to a fair and public trial by the procedure his attorney agreed to here.

> The Sixth Circuit in *Fields v. Bagley*, 275 F.3d 478 (6th Cir.2001) explained the doctrine as follows:

>> The doctrine of "invited error" is a branch of the doctrine of waiver in which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside. *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 61 (6th Cir.1991). When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *See Leverett v. Spears*, 877 F.2d 921, 924 (11th Cir.1989); *Draughn v. Jabe*, 803 F.Supp. 70, 75 (E.D.Mich.1992).

> 275 F.3d 478, 485-86. In accordance with this doctrine, " '[a]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." ' *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir.2002) (quoting *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir.1990). *See also L. S. v. Brika*, 416 F.3d 514, 525 (6th Cir.2005) (counsel's decision to permit the judge to speak to jury in jury room was an invited error that did not result in prejudice to defendant), cert. denied, 2006 W.L. 387120 (U.S. February. 21, 2006).

*Grant v. Brigano*, 2007 WL 2782742 (S.D. Ohio September. 24, 2007)(rejecting petitioner's claim that he was denied his right to a public trial based on closure of the courtroom and surrounding areas where defense counsel had agreed to this procedure at trial.) Thus, assuming arguendo, that petitioner's claim had any merit, because he invited the error by agreeing to the procedure of which he now complains, his claim would not have succeeded, if raised on appeal. Therefore, petitioner has failed to establish the ineffective assistance of appellate counsel on this basis.

Petitioner also asserts in claim four that he was denied the effective assistance of appellate counsel because his attorney failed to appeal the District Court's denial of his Rule 29 motion. In this respect, he again argues that the evidence was constitutionally insufficient to sustain his conviction.

> Rule 29(c) of the Federal Rules of Criminal Procedure governs a motion for a judgment of acquittal following a jury verdict or discharge. That rule permits the court to set aside a guilty verdict and enter a judgment of acquittal when the evidence is insufficient to sustain a conviction. Fed. R. Crim. Pro. 29(c)(2). When reviewing a criminal defendant's motion for a judgment of acquittal, the court "must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Humphrey,* 279 F.3d 372, 378 (6th Cir.2002) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *accord, e.g., United States v. Sawyers,* 409 F.3d 732, 735 (6th Cir.2005); *United States v. Talley,* 164 F.3d 989, 996 (6th Cir.1999).
>
> The Court must consider both circumstantial and direct evidence. *Humphrey,* 279 F.3d at 378. Indeed, "[c]ircumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt." *Id* . (quoting *United States v. Talley,* 194 F.3d 758, 765 (6th Cir.1999)). However, in reviewing the evidence, the Court must not "weigh credibility so long as it is not factually insubstantial or incredible." *United States v. Welch,* 97 F.3d 142, 151 (6th Cir.1999).

*United States v. Roth,* 2009 WL 1748748 (E.D. Tenn. June 19, 2009). For the reasons previously discussed, because the evidence plainly was sufficient to sustain petitioner's conviction, he has failed to establish the ineffective assistance of appellate counsel due to his attorney's failure to raise this issue on direct appeal.

Claim four is without merit.

## CLAIM FIVE

In claim five, petitioner asserts that his sentence must be vacated pursuant to *United States v. Ossa-Gallegos*, 491 F.3d 537, 538-39 (6th Cir. 2007), *overruling United States v. Isong*, 111 F.3d 428 (6th Cir. 1997)(holding that tolling is not a "condition" of supervised release under 18 U.S.C. 3583(d), and a period of supervised release is not tolled during the time that a defendant is outside of the United States as a result of deportation), because the District Court ordered his term of supervised release be tolled if he was deported until such time as he returned to the United States. Respondent agrees that, in view of the decision in *United State v. Ossa-Gallegos*, the District Court should issue an amended Judgment Entry indicating that petitioner's term of supervised release shall not be tolled while he is outside of the United States subsequent to his release from prison. This Court agrees. Therefore, the Magistrate Judge **RECOMMENDS** that an amended Judgment Entry of Sentence be issued deleting this provision from petitioner's sentence.

## CLAIM SIX

In claim six, petitioner asserts that the District Court's use of underlying conduct charged in Count One of the Indictment, violated the Sixth Amendment. Again, the United States Court of Appeals for the Sixth Circuit has already rejected this claim on direct appeal, overruling petitioner's various challenges to his sentence, and affirming his sentence on direct appeal:

> We first address Brika's non-constitutional challenges to various guidelines enhancements. Brika argues that the district

court erred by finding him criminally responsible for a kidnapping offense; that the district court ignored our court's prior mandate; and that the district court erred by relying on unreliable evidence at sentencing. Each of these claims lacks merit.

## A

Brika first argues that the district court erred in determining that he was criminally responsible for a kidnapping offense, such that the higher base offense level for kidnapping would apply by cross-reference. Because a determination of criminal responsibility is a mixed question of law and fact, we review it *de novo. See United States v. Whited,* 473 F.3d 296 (6th Cir.2007). Facts employed by the district court to decide criminal responsibility are reviewed for clear error. *United States v. Gates,* 461 F.3d 703, 709 (6th Cir.2006).

Brika was convicted for using a telephone to extort money in exchange for the release of a kidnapped person, in violation of 18 U.S.C. § 875(a). USSG § 2A4.2 applies to that offense and carries a base offense level of 23. That provision also contains the following cross-reference provision: "If the defendant was a participant in the kidnapping offense, apply § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint)." Section 2A4.2's application note defines a "participant" as a person "criminally responsible" for the kidnapping offense, even though that person need not have been convicted of kidnapping. To determine criminal responsibility, we apply the federal kidnapping statute, 18 U.S.C. § 1201, which provides, inter alia:

§ 1201. Kidnapping

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when-

(1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in

committing or in furtherance of the commission of the offense;

....

shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

Applying that statute, the facts in this record show, by a preponderance of the evidence, *see Gates,* 461 F.3d at 708, that Brika was criminally responsible for the kidnapping. His conduct satisfies both *actus reus* elements of the offense. He (1) seized, kidnapped, abducted, or carried away Bousfiha and (2) held him for ransom or reward. As noted by the district court on resentencing, there is ample evidence in the record that Brika paid the three women who abducted Bousfiha; that he otherwise led the group that secured Bousfiha's detention; that he visited and confronted Bousfiha in person in Morocco while Bousfiha was being detained; that Bousfiha heard Brika's voice while being held; that Brika sought ransom from the victim's family by telephone; and that Brika otherwise exercised authority over those who kidnapped and held the victim. The district court found those facts, and they are not clearly erroneous. They show by a preponderance of the evidence that Brika's conduct satisfies the two *actus reus* elements of § 1201.

Both of the statute's Commerce-Clause-based jurisdictional elements, *see United States v. Lopez,* 514 U.S. 549, 562-63, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), are also satisfied here, although only one is required. Bousfiha was transported in foreign commerce when he was kidnapped and detained in Morocco. Brika traveled in foreign commerce when he flew to Morocco in furtherance of the offense and then reentered the United States. He traveled in interstate commerce when he flew from New York to Cincinnati to Milwaukee, and then again when he drove to Indiana. Brika also, as a necessary condition of his § 875(a) conviction, used a means or instrumentality of interstate or foreign commerce (a telephone) in committing the offense for which he was convicted. Brika thus satisfies each jurisdictional element of § 1201, although he need only have satisfied one to have been criminally responsible. Brika's conduct rendered him criminally responsible for kidnapping according to the elements of that offense under 18 U.S.C. § 1201.

We pause to dispense with another of Brika's arguments with respect to this claim. Brika argues that the district court applied a *per se* rule that any individual convicted under § 875(a) is necessarily subject to the kidnapping cross-reference. If Brika's characterization of the district court's ruling were accurate, his argument might have merit. There must be cases in which a defendant could be convicted under 18 U.S.C. § 875(a) without being criminally responsible for the kidnapping offense itself. Concluding otherwise would allow the cross-reference to swallow the normally applicable guidelines provision. We obviously are not inclined to render guidelines provisions superfluous by interpretation. *United States v. Sanders,* 162 F.3d 396 (6th Cir.1998); *United States v. Bazel,* 80 F.3d 1140, 1144-45 (6th Cir.1996).

However, Brika's characterization of the district court's ruling is inaccurate. The district court entertained the possibility that a conviction under § 875(a) would always implicate the cross-reference, but eventually settled on a fact-pattern in which a person could be convicted under 18 U.S.C. § 875(a) without being "criminally responsible" for the kidnapping itself. In that situation, an opportunist, knowing of a kidnapping victim, would solicit ransom from the victim's close friends or relatives. In such a case, according to the district court, the defendant would not be "criminally responsible" for the kidnapping. JA 190-200.

Although we need not decide whether an "opportunist" is the only § 875(a) defendant who would not be subject to the cross-reference, we pause to note one other point. The statute's plain text requires that, for one to be guilty of kidnapping, he must (1) seize, confine, inveigle, decoy, kidnap, abduct, or carry away his victim *and* (2) hold him for ransom or reward or otherwise. Each *actus reus*-some manner of seizure *and* of holding-is a required element of the offense. A defendant might be responsible for the holding, but not the seizure, of a kidnapping victim. A defendant might also hired by kidnappers *after* a seizure in order to secure ransom. In these cases, and perhaps in others, a defendant convicted of violating § 875(a) might not be held criminally responsible for a kidnapping.

For this case, however, we need only say that the district court did not rest on any *per se* rule requiring the application of the cross-reference. Instead, after discussing how an individual could avoid the application of the cross-reference, the district court evaluated the facts of this case and held, by a preponderance of the evidence, that Brika was criminally responsible for the kidnapping. Reviewing that

determination *de novo,* we agree.

B

Brika next argues that the district court violated this court's prior mandate by relying on conduct at sentencing that a jury could not agree on. We review the scope of our own mandates *de novo, United States v. Orlando,* 363 F.3d 596, 600 (6th Cir.2004), taking into account the letter and spirit of the mandate, *United States v. Twp. of Brighton,* 282 F.3d 915, 919 (6th Cir.2002). When we last considered Brika's case, we issued an opinion ending with the following:

At sentencing, Brika objected to the various enhancements, but he did not specifically make a Sixth Amendment claim. Nonetheless, we review sentencing enhancements in violation of the Sixth Amendment under plain error review. *United States v. Oliver,* 397 F.3d 369, 380-81 (6th Cir.2005). In light of the district court's clear use of facts not found by the jury to increase Brika's sentence by a substantial amount, we vacate the sentence and remand this case to the district court for resentencing in a manner consistent with *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

*Brika,* 416 F.3d at 531.

This issue is not a difficult one. It is clear that our prior mandate was a garden-variety *Booker* remand. Surely, if we had held that the cross-reference itself had violated the Sixth Amendment because the jury had hung on the hostage-taking count, the district court would have been bound by that holding. However, on the previous appeal, we simply vacated and remanded in light of *Booker* because the district court's sentencing of Brika under a mandatory guidelines regime violated the Sixth Amendment.

The scope of the remand was to reconsider Brika's sentence in light of *Booker* and in light of developing circuit case law in that case's wake. In other words, we did not direct the district court to make any particular Sixth Amendment ruling one way or the other on the question of how to employ conduct on which the jury could not agree. Instead, we merely vacated and remanded the case with instructions to follow *Booker* faithfully. The district court did so and thus complied with our mandate.

35

C

Brika next argues that the district court erred by relying on unreliable evidence when it applied an enhancement for leading or organizing a group of five or more people in the commission of the kidnapping offense. Specifically, Brika contends:

The court relied on statements made by women in Morocco in which they claimed they were paid to participate in the offense. The women were never in court, and never testified. Neither was the alleged officer who took said statements. There was no evidence as to how those statements were obtained, or who provided the translation of those statements. The defense had no ability to cross-examine these women or otherwise impugn their credibility. The court should not have relied on such evidence in determining the Guidelines range.

Br. of Appellant, at 17.

Brika acknowledges that neither the rules of evidence nor the right to confront witnesses applies at sentencing. *See United States v. Katzopoulos,* 437 F.3d 569 (6th Cir.2006); *United States v. Wisdom,* 175 Fed.Appx. 702, 708 (6th Cir.2006). However, he is correct that the district court is obligated to rely on *reliable* evidence at sentencing. As we have noted, in "challenges to [hearsay] evidence considered by the sentencing judge, the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence." *United States v. Silverman,* 976 F.2d 1502, 1512 (6th Cir.1992) (en banc). *See also* USSG § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Brika's challenge thus raises two questions. First, what evidence did the district court rely on when enhancing Brika's sentence based on a leadership role? Second, has Brika shown that evidence to be unreliable under the *Silverman* standard? At resentencing, the district court said:

It appeared that all of the activities surrounded Mr. Brika, at least that was the testimony. He coordinated with the

kidnappers in Morocco, he coordinated with the women who were the first to abduct Mr. Bousfiha, and he was the person who seemed primarily involved with coordinating with the family, and indeed he was the individual who went to pick up the money.

And if you just do the math, there were three or four women involved with the initial abduction, there were either three or four men who originally captured Mr. Bousfiha, who took him up the mountain to the house, and then there were two others who replaced those individuals when those individuals were considering entering into a side deal with Mr. Bousfiha I think for $20,000, then that would mean five or more persons. So the probation officer properly concluded that an additional 4 levels should be used to increase the total offense level.

First, we note that the women's statements were confessions and hence against their penal interests. The women were in fact prosecuted in Morocco for their crimes. Under our law of evidence, the statements' reliability is bolstered by being given under such circumstances. *Cf.* Fed. R. Evidence. 804(b)(3); *United States v. Luciano*, 414 F.3d 174, 180-81 (1st Cir.2005) (noting that out-of-court statements employed at sentencing had indicia of reliability of excited utterances under Fed. R. Evid. 803(2)).

Moreover, given the other evidence in this case, the statements of the three women are corroborated and bear adequate indicia of reliability. *Cf. Luciano,* 414 F.3d at 180. Bousfiha himself testified that he was abducted by three women, one of whom was named Amal. He also testified that the men who held him in custody discussed the whereabouts of the three women after the kidnapping. Bousfiha also testified that at least two men kept him in custody in Morocco initially and that new people guarded him after he tried to bribe the first two. Bousfiha also testified that Brika threatened him while he was in the kidnappers' custody in Morocco-"I was blindfolded, I did have my hand tied, my feet tied, I was on the ground, on the floor. And he came and kicked me and talked to me in English. And he said, I got you now. You're mine. Who do you think you are? And he said, I'm going to order the guys don't give you no water, no food for three days. You will die, cut you in pieces, and throw you in the sea for the fish."

37

As we have noted, Brika must show both that the three women's statements were materially false or unreliable, and that those false statements "actually served as the basis" for the district court's sentencing decision. *See Silverman*, 976 F.2d at 1512. He has made neither showing. On the contrary, the evidence in this case indicates that the statements bear substantial indicia of reliability. In light of the evidence taken as a whole, the district court did not rely on unreliable evidence at sentencing. Accordingly, its factual determination that Brika led a group of five or more people to kidnap Bousfiha was not clearly erroneous, *see Gates*, 461 F.3d at 709, and the enhancement was proper.

### III

We now address Brika's constitutional and *Booker* challenges to his sentence, each of which attacks from a different angle the district court's consideration of conduct on which a jury could not agree. First, he argues that the court's consideration of that conduct at sentencing violated the Sixth Amendment. Second, he contends that the district court's application of various guidelines enhancements under a preponderance-of-the-evidence standard denied him due process. Third, he argues that his sentence was both substantively and procedurally unreasonable. Each challenge lacks merit.

Brika first alleges that the district court's consideration at sentencing of conduct on which a jury could not agree violated the Sixth Amendment. We believe that this argument is foreclosed by *United States v. Watts*, 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). The Supreme Court held in *Watts* that conduct on which a jury rendered a judgment of acquittal may be considered by a sentencing judge, so long as the conduct was proven by a preponderance of the evidence. 519 U.S. 148, 157, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997) ("We therefore hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."). If district courts at sentencing may employ conduct on which a jury rendered a judgment of acquittal using only a preponderance-of-the-evidence standard, then surely they may employ conduct on which a jury could not agree using the same standard.

We acknowledge that *Watts* was decided before *United States v.*

*Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which held that the Guidelines are advisory rather than mandatory. Nevertheless, other circuits have seen no reason to disturb *Watts*'s holding in *Booker*'s wake. *United States v. Duncan,* 400 F.3d 1297, 1304 (11th Cir.2005); *United States v. Price,* 418 F.3d 771, 788 (7th Cir.2005). *See also United States v. Fruchter,* 137 Fed.Appx. 390, 394 (2d Cir.2005) ("[U]nder the Guidelines, the district court was entitled to consider acquitted conduct as relevant conduct."). *Cf. United States v. Green,* 181 Fed.Appx. 506, 508 (6th Cir.2006) (citing *Watts* with approval).

We see no logical contradiction between *Watts* and *Booker.* It is clear after *Booker* that district courts may still find facts at sentencing by a preponderance of the evidence. *Gates,* 461 F.3d at 708; *United States v. Stone,* 432 F.3d 651, 654-55 (6th Cir.2005).[FN3] Congress has made clear that, in making those factual determinations, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

FN3. As we recently noted, *Booker* did nothing to affect the standards of proof relevant at sentencing: "Before *Booker,* the Supreme Court had held on a number of occasions 'that application of the preponderance standard at sentencing generally satisfies due process.' *Booker* did nothing to change this standard." *United States v. Green,* 181 Fed.Appx. 506, 508 (6th Cir.2006) (citing *Watts,* 519 U.S. at 156, 117 S.Ct. 633; *Nichols v. United States,* 511 U.S. 738, 748, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994); and *McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986))

Given those conditions, we see no reason to exclude from the court's consideration conduct on which a jury either deadlocked or rendered a judgment of acquittal. It goes without saying that district courts hear first-hand evidence pertaining to such conduct and that defense counsel has the opportunity to test the reliability of evidence pertaining to that conduct at trial. The reliability of evidence is also assured, to some extent, by the rules of evidence.

*Booker* does not suggest otherwise. That case and its predecessors deal with whether the sentencing guidelines are mandatory and whether a court may sentence a defendant above an offense's statutory maximum by finding facts not authorized by the jury's verdict. *Booker* permits district courts to find facts at sentencing.

*Watts* discusses only the standard of proof that applies when that fact-finding takes place. There is no contradiction between them. Accordingly, *Watts* controls here. Until the Supreme Court holds differently, a jury's inability to reach a verdict on a particular count under a reasonable-doubt standard does not require district courts to employ anything other than a preponderance standard at sentencing.

Brika does point us to two district-court decisions that hold that the Sixth Amendment requires that a district court apply a reasonable-doubt standard, rather than a preponderance standard, when considering conduct on which the jury rendered a judgment of acquittal. *United States v. Coleman,* 370 F.Supp.2d 661, 668-69 (S.D. Ohio 2005); *United States v. Pimental,* 367 F.Supp.2d 143, 152-53 (D. Mass.2005). In both cases, the district courts held themselves to a reasonable-doubt standard at sentencing when dealing with facts on which a jury had rendered a judgment of acquittal. In the first, *Coleman,* 370 F.Supp.2d at 668-69, the district court wrote that, when considering conduct for which a defendant was acquitted, sentencing judges should employ a reasonable-doubt standard in finding facts, because, "otherwise, a defendant's Sixth Amendment right to a jury trial is eviscerated." [FN4] In the second, *Pimental,* the district reached the same holding as the *Coleman* court reached with respect to acquitted conduct, writing that "[e]ven if ... a judge may consider all facts, including acquitted conduct, the standard of proof to be applied should be beyond a reasonable doubt." 367 F.Supp.2d at 152-53.

FN4. *Coleman* also produces the following difficulty. A jury convicts a defendant of one out of two charged offenses. A sentencing court could, when sentencing on the convicted count, flatly disagree with the jury's determination on the acquitted count and find guilt beyond a reasonable doubt. The rule proposed by *Coleman* thus could lead to conflicting determinations by judges and juries, while the *Watts* rule avoids that problem, respects the jury's reasonable-doubt determination, and simply applies the congressionally mandated standard.

While we disagree with the substantive outcomes of those two cases in light of *Watts,* they have no impact here because they deal only with acquitted conduct, rather than conduct on which the jury could not agree. Moreover, they say nothing about a district court's power to *consider* either type of conduct. Instead, they only seek to alter the standard a district court should apply. [FN5] Two other circuits

40

have held that, even in *Booker*'s wake, acquitted conduct may be considered by the sentencing judge under a preponderance standard. *Duncan,* 400 F.3d at 1304; *Price,* 418 F.3d at 788. If acquitted conduct may be considered under that standard, certainly no higher standard should apply to conduct on which a jury could not agree. We hold, therefore, that the preponderance standard, supplied by *Watts* and unchanged by *Booker,* applies regardless of whether the jury hung on a particular count.

FN5. We note that, in this case, the district court said that, even considering the evidence in this case under a reasonable-doubt standard, it would have found Brika "criminally responsible" for the kidnapping. While we agree, that conclusion is unnecessary to the outcome of this case because district courts need only apply a preponderance standard at sentencing.

### B

Brika next argues that the district court's reliance on conduct on which the jury could not reach a verdict violated due process in his particular case because it drastically increased his guidelines range from 46 to 57 months to 262 to 327 months. Brika ultimately was sentenced to 156 months.

Brika's due-process claim rests on *United States v. Kikumura,* 918 F.2d 1084, 1089 (3d Cir.1990). In that case, the Third Circuit held as a matter of statutory interpretation that clear-and-convincing-evidence should be the applicable standard in cases where "the magnitude of a contemplated departure is sufficiently great that the sentencing hearing can fairly be characterized as 'a tail which wags the dog of the substantive offense.' " *Id.* at 1101 (citing *McMillan v. Pennsylvania,* 477 U.S. 79, 88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)). The factor at issue in *Kikumura* was a single, almost twelve-fold departure of 327 months from the top of the applicable guidelines range of 27 to 33 months.[FN6]

FN6. In *Watts,* the Supreme Court, citing *Kikumura,* expressly left unanswered the question of whether such extreme departures required higher than a preponderance standard. 519 U.S. at 156-57, 117 S.Ct. 633 ("We acknowledge a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and

41

convincing evidence. The cases before us today do not present such exceptional circumstances, and we therefore do not address that issue.").

Prior to *Booker,* we declined to follow *Kikumura* and squarely rejected all claims along the lines of the one Brika advances here. *United States v. Mayle,* 334 F.3d 552, 556-57 (6th Cir.2003) ("Although the case before us undeniably presents one of those exceptional situations where the sentencing factor has a disproportionate effect on the sentence relative to the offense of conviction, this Circuit has previously rejected the invitation to adopt a higher standard of proof simply because the enhancement would significantly increase the defendant's sentence."); *United States v. Graham,* 275 F.3d 490, 517 (6th Cir.2001).

Today, while we reaffirm those precedents, we reformulate them in *Booker* terms. *Kikumura's* reasoning might have had some basis in due-process principles under the mandatory guidelines regime. That is so because a defendant had an entitlement to be sentenced within his guidelines range absent circumstances justifying upward departure. *United States v. Guarin,* 898 F.2d 1120 (6th Cir.1990). However, after *Booker,* the only constraints on sentencing judges are the statutory maximum and minimum for the offense at issue and the sentencing statutes, particularly 18 U.S.C. § 3553(a). *Booker,* 543 U.S. at 232-33, 125 S.Ct. 738; *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

Viewed in this light, Brika could not have had a reasonable expectation that he would have received a sentence within his guidelines range absent the application of the various enhancements. Instead, he had only an entitlement to be sentenced to a reasonable sentence within the statutory range. Brika's argument-that the district court violated his due-process rights when it calculated his guidelines range as 262 to 327 months by applying various enhancements under a preponderance standard-thus misses the mark.[FN7]

FN7. We note one other important point. Even if we applied *Kikumura,* it would be of no aid to Brika. *Kikumura* dealt with a single and substantial sentencing departure rather than small, individual enhancements authorized by the guidelines. In this case,

the district court applied the cross-reference to kidnapping under § 2A4.1. The court then applied a six-level ransom-demand enhancement, a four-level leadership enhancement, a two-level serious-bodily-harm enhancement, a two-level dangerous weapon enhancement, and a one-level enhancement for not releasing the victim within seven days. The offense level was thus 39.

Brika's position would require that the government prove each of those enhancements by a standard of proof higher than preponderance-of-the-evidence. At the time Brika was sentenced, the cross-reference provision, by itself, increased Brika's sentence by only one level. Due process certainly would not have required a higher standard of proof for a one-level enhancement by itself. *Silverman*, 976 F.2d at 1518.

The same reasoning applies to the other enhancements. None of the individual enhancements in this case was very large. If we were to adopt Brika's position, district courts could not predict when due process would require heightened standards of proof. After a three-level enhancement? An eight-level enhancement? How would the defendant's pre-enhancement offense level factor into such an analysis? We decline to invite more uncertainty into criminal sentencing. Even if we applied *Kikumura* to some cases, we would apply it only to departures (or perhaps single enhancements) large enough to "wag the dog" of the substantive offense. 918 F.2d at 1089. None of the enhancements here does that.

After *Booker,* we believe Brika's due-process challenge is cognizable more properly as a challenge to the reasonableness of his sentence. Judge Bye's concurrence in *United States v. Bah,* which Brika cites in his brief, makes this point clear. 439 F.3d 423, 432-33 (8th Cir.2006). Judge Bye noted that an upward departure of 180 to 300 percent would have been unreasonable and justifiable only in "extraordinary circumstances." *Id.* at 432-33 (citing *United States v. Saenz,* 428 F.3d 1159, 1162 (8th Cir.2005)).

We agree with Judge Bye on the proper analytical framework. As a defendant's sentence increases further and further above his properly calculated guidelines range, it becomes more and

more likely that his sentence is substantively unreasonable. *See, e.g., United States v. Davis,* 458 F.3d 491 (6th Cir.2006). Thus, while we reaffirm our earlier holding that due process does not require sentencing courts to employ a standard higher than preponderance-of-the-evidence, even in cases dealing with large enhancements, *see Mayle,* 334 F.3d at 556-57, we also hold such challenges should be viewed through the lens of *Booker* reasonableness rather than that of due process.

C

We now proceed to address Brika's *Booker* reasonableness challenges. Under *Booker,* we review sentences for reasonableness. *United States v. Webb,* 403 F.3d 373, 383 (6th Cir.2005). However, a district court's role is not to impose a "reasonable sentence." Instead, a district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a). "Reasonableness is the appellate standard of review in judging whether a district court" has fulfilled that mandate. *United States v. Collington,* 461 F.3d 805, 807-08 (6th Cir.2006) (citing *United States v. Foreman,* 436 F.3d 638, 644 n. 1 (6th Cir.2006)).

The Sixth Circuit's reasonableness test has substantive and procedural components. "A sentence may be considered substantively unreasonable when the district court select[s] the sentence arbitrarily, bas [es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor." *Ibid.* (citing *Webb,* 403 F.3d at 383) (internal quotation marks omitted). "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Ibid.*

I    In arguing that his sentence was unreasonable, Brika raises two claims. First, he contends that the district court sentenced him outside of his guidelines range because the district court misapplied the Guidelines by relying on conduct on which the jury could not agree. *Br. of Appellant,* at 19-20. This is a procedural-reasonableness challenge because it attacks the process by which the district court applied the Guidelines. We already have rejected Brika's challenge to the district court's employment of conduct on which the jury could

44

not agree and to the court's application of various guidelines enhancements at sentencing. Brika's guidelines range was calculated correctly. His procedural-reasonableness challenge thus lacks merit.

Brika's other *Booker* claim is a substantive-reasonableness challenge. According to Brika, if the district court had not considered conduct on which the jury could not agree, his sentence would have been approximately five years. That fact, combined with "the lack of a prior criminal history for the Appellant, his good acts, his family and friend support, and his good works while incarcerated," leads to the conclusion that "the reasonable sentence to impose would have been the five year term." *Br. of Appellant,* at 21.

Brika's claim amounts to an assertion that the district court failed to accord proper weight to his mitigating evidence. *Collington,* 461 F.3d at 807-08 (noting that a substantive-reasonableness challenge is one that alleges that the district court failed to accord proper weight to a sentencing factor under 18 U.S.C. § 3553(a)); 18 U.S.C. § 3553(a)(1) (requiring the district court to consider the history and characteristics of the defendant). It is true that the defendant had little criminal history. It is also true that his family and friends extended warm support for him. And, it is true that the defendant has done several good things while incarcerated, including working as a Draftsman Helper in prison. Indeed, his supervisor in that job wrote him a letter of recommendation at re-sentencing, which his supervisor alleges was a rare thing for him to have done. In other words, there appears to be some justification for a downward variance from Brika's guidelines range.

That is precisely what happened here. The district court knew that the defendant's guidelines range was 262 to 327 months and that the statutory maximum was 240 months. Nevertheless, the court on resentencing, after hearing Brika's mitigating evidence, sentenced him only to 156 months. Surely, the district court did not note explicitly on the record how much weight it accorded to each particular piece of mitigating evidence. Nevertheless, the record in this case indicates that the district court considered each piece of evidence offered. Witnesses, including Brika's friend Courtney Warren and his sister Latifa Brika, testified on his behalf. The district court posed its own questions to Ms. Warren. The district court imposed a sentence that was more than 80 months below the

45

> statutory maximum and even further below the bottom of the applicable guidelines range. We have no doubt that the district court adequately considered Brika's mitigating evidence. We also note that the district court honored the defendant's request to be placed in a facility close to his family. In light of these factors, we believe the district court chose a substantively reasonable sentence.

*United States v. Brika*, 487 F.3d at 454-464.  This Court therefore will not now again consider petitioner's challenge to his sentence here.  *Dupont v. United States*, 76 F.3d at 110-111.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that claims one through three and five and six be **DISMISSED**; and that the petition for a writ of habeas corpus be **GRANTED** on claim four, and an Amended Judgment Entry of Sentence be issued deleting the provision of petitioner's sentence that includes the tolling of his term of supervised release during the time period that he is outside of the United States as a result of deportation.

Petitioner's request for an evidentiary hearing is **DENIED**.

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made

herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.


s/Mark R. Abel
United States Magistrate Judge